**EXHIBIT 2**

# REVOLVING LINE OF CREDIT
# LOAN AGREEMENT
## (ALL TANGIBLE AND INTANGIBLE ASSETS AND ACCOUNTS RECEIVABLE AND INVENTORY)

This agreement is entered into by and between 21stCenturyRoofing, Inc., a MASSACHUSETTS corporation ('Borrower') and On the Top, a Massachusetts General Partnership ('Lender').

Borrower desires to obtain from Lender a revolving line of credit ('Loan') and Lender is willing to make the Loan, but only on the terms and conditions hereinafter set forth.

WHEREAS, the Borrower is a Debtor in Possession in a Chapter 11 Federal Bankruptcy Proceeding pending in the Eastern District for the District of Massachusetts;

WHEREAS, the Borrower seeks financing post petition for the day to day operation of its commercial roofing business;

WHEREAS, the Borrower has limited access to credit due to its current insolvency;

WHEREAS, the Lender has had the opportunity to perform due diligence on the operations of the Borrower and is willing to provide credit to the Borrower provided the credit facility is approved by the United States Bankruptcy Court pursuant to the terms and conditions of this Loan Agreement, the corresponding Promissory Note and the corresponding Security Agreement;

NOW, THEREFORE in consideration of the premises and the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **LOAN.**

1.1 REVOLVING LINE OF CREDIT. Subject to the terms and conditions contained herein and in the other documents, instruments and agreements executed in connection with the Loan and the security therefor ('Loan Documents'), Lender will establish for Borrower the Loan as a revolving line of credit against which Lender will make advances ('Advances') from time to time for the purpose of providing working capital to Borrower. Subject to the terms hereof, Borrower shall have the right to obtain Advances, repay Advances and obtain additional Advances; however, all of the Advances hereunder shall be viewed as a single loan. At no time shall the unpaid principal balance of the Loan exceed the amount set forth in Section 13 hereof ('Maximum Amount') and all Advances of the Loan shall be made on or before the expiration date set forth in Section 13 hereof.

1.2 ADVANCES. Subject to the terms and conditions hereof, Advances of the Loan will be made on a weekly basis not to exceed a gross amount of Five Hundred Thousand Dollars ($500,000.00). Borrower shall provide to the Lender a draw request every week, no later than noon each Wednesday setting forth the amount of the draw request and the anticipated purpose

1

Borrower Initials_____
Lender Initials_____

of such draw request on an "Operating Company Line Item Basis". The Borrower may include a miscellaneous line item not to exceed $1,000.00 in any draw request, however to the extent such draw request for the miscellaneous line item is used, in such event the Borrower must account for the use of proceeds to the Lender for such miscellaneous line item draw request. Upon receipt of the draw request from the Borrower the Lender shall fund such draw request by wire to the Borrower's "Debtor in Possession" account no later than the following Monday by 4:00 p.m. "Operating Company Line Item Basis" is an amount required by Borrower, which has arisen from requirement of the Buyer to pay for the delivery and/or shipment of products ordered and deemed necessary for the Borrower to operate in its ordinary course of business, and/or which has arisen from requirement of Buyer to fund payroll and payroll taxes for the costs of its goods and services sold or the payroll and payroll taxes required to pay for the salaries of the general sales and administrative personnel of the Borrower's ordinary course of business, and/or which has arisen from any other normal operating expense occasioned in the ordinary course of the Borrower's business as reflected on the profit and loss cost of goods and expense items.

1.3 NOTE. The Loan shall be evidenced by a promissory note ('Note') of even date herewith in a form approved by Lender in the Maximum Amount, payable in accordance with the terms thereof. Interest on the principal amount outstanding from time to time shall be charged as provided in the Note. In the event that any payment under the Note is not made due to a lack of cash flow, the interest payment due shall accrue and such failure to pay shall not be deemed a default unless there are 8 consecutive months of the Borrower's failure or inability to pay the monthly interest due, or 14 months of the Borrower's failure or inability to pay the monthly interest due within any one 18 month period, at which time the Note and this Loan agreement shall be deemed to be in default and the Lender may exercise all rights and remedies under this Loan Agreement as well as any common law or statutory rights.

1.4 PREPAYMENTS. The Loan or any principal Advanced hereunder may be prepaid at any point in time without pre-payment penalty.

1.5 REMITTANCE ACCOUNT. If so indicated in Section 13 hereof, the proceeds received by Borrower from its inventory and collection of accounts receivable, which, pursuant to the Security Agreements (hereinafter defined), are required to be transmitted to Lender, shall be handled and administered by Lender in and through a remittance account in accordance with the provisions of the Security Agreements. All such Remittance shall be applied first to outstanding and accrued interest and then to principal. So long as the Loan Advances shall not exceed $500,000.00 at any point in time, the Remittance shall serve to reduce the obligation due from Borrower to Lender and shall further cause the availability for advances to increase to the difference between the total amount of outstanding advances and accrued principal and $500,000.00.

2. **SECURITY.**

2.1 SECURITY AGREEMENTS. As security for the payment of the Note, the Loan, and all other liabilities and obligations of Borrower to Lender, now existing or hereafter created, Borrower shall grant to Lender a security interest in all of Borrower's tangible and intangible assets, inventory, accounts receivable, rights to payment and such other property ('Property'), as

2

Borrower Initials_____
Lender Initials_____

more particularly described in one or more security agreements ('Security Agreements') executed by Borrower and delivered to Lender in form and substance satisfactory to Lender, in its sole and absolute discretion. The Security Agreements shall grant to Lender a first and prior security interest in and to the Property, except as otherwise expressly provided therein. In addition the grant of this Loan is contingent upon approval from the United States Bankruptcy Court for the Eastern District of Massachusetts approving this Loan and giving it priority over all other creditors for all after acquired collateral of the Borrower from the date of the filing of the Borrower's Ch. 11 Bankruptcy proceeding.

2.2 ADDITIONAL DOCUMENTS. Borrower shall execute from time to time upon the request of Lender, such financing statements or other documents reasonably required by Lender to perfect or continue Lender's security interests described herein.

3. **ADVANCES**.

3.1 CONDITIONS PRECEDENT TO ADVANCES. Lender shall have no obligation to make any Advance until the conditions set forth in the following subparagraphs and elsewhere herein have been satisfied at the expense of Borrower, as determined by Lender in its sole and absolute discretion:

   (a) Borrower shall have delivered to Lender, in form and substance satisfactory to Lender, this Agreement, the Note, the Security Agreements and such other documents, instruments, financing statements, certificates and agreements as Lender may reasonably request;

   (b) Borrower shall have delivered to Lender, in form and substance satisfactory to Lender in its sole and absolute discretion certified copies of resolutions of Borrower's board of directors authorizing Borrower to execute, deliver, honor and perform the Loan Documents and to grant the security interest in the Property as provided in the Security Agreements and certifying the names and signatures of the officers or partners, as the case may be, of Borrower authorized to sign the Loan Documents;

   (c) All of Lender's liens and security interests securing the Loan, shall have been validly perfected;

   (d) No material adverse change shall have occurred in the business or financial condition of Borrower or any guarantor since the date of the latest financial statements given to Lender by on behalf of Borrower or such guarantor;

   (e) The Borrower shall have obtained an Order from the United States Bankruptcy Court for the Eastern District of Massachusetts authorizing the execution by the Borrower as a Debtor in Possession under Chapter 11 of the United States Bankruptcy Code of the Loan and Loan Documents and further that the Order permit the Advances made by the Lender under the Loan, both pre-petition and post petition to be secured on any and all of assets of the Borrower (excepting any and all pre-petition account receivables of the Borrower secured pre-petition by Milford National Bank);

Borrower Initials_____
Lender Initials_____

(f) Each of the warranties and representations made by Borrower in the Loan Documents shall be true and correct as of the date of each Advance; and

(g) Borrower shall have kept and performed the various covenants, obligations and agreements on its part to be kept and performed under the Loan Documents and no Event of Default, or act or event which with the giving of notice or the passage of time, or both, would constitute an Event of Default hereunder or under any of the other Loan Documents, shall have occurred and be continuing.

3.2 REQUEST FOR ADVANCES. Advances may be made by Lender upon request by the Borrower in the manner set forth in section 1.2 provided that the request is made by an authorized and disclosed representative of the Borrower. Each request by Borrower for an Advance shall constitute a reaffirmation, as of the date of such request, of all of the representations and warranties of Borrower contained in this Agreement and in the other Loan Documents.

3.3 NO WAIVER. No Advance shall constitute a waiver of any of the conditions to any further Advances nor, in the event Borrower is unable to satisfy any such condition, shall any such Advance have the effect of precluding Lender from thereafter declaring such inability to be an Event of Default (as hereinafter defined).

4. **FEES.**

4.1 FEES. Lender shall charge no fees to the Borrower associated with this Loan.

4.2 UTILIZATION. Lender shall charge no utilization fee to the Borrower in association with this Loan.

4.3 INSPECTION FEE. Lender shall charge no inspection fee in association with this Loan.

4.4 INTEREST RATE FEE. Lender shall charge an interest rate on a 360 day annualized basis at a fixed rate of 6.5% per annum. Interest shall accrue and not compound and remain fixed throughout the duration of the Loan.

5. **REPRESENTATIONS AND WARRANTIES.**

5.1 REPRESENTATIONS AND WARRANTIES. Borrower makes the following representations and warranties to Lender, which representations and warranties shall survive the execution of this Agreement:

(a) Legal Status. Borrower, has been duly organized and is validly existing under the laws of the Commonwealth of Massachusetts, and is qualified to transact business, and has made all filings and is in good standing, in the Commonwealth of Massachusetts and in every other jurisdiction in which the nature of its business requires such qualifies;

4

Borrower Initials_____
Lender Initials_____

(b) No Violation. The making and performance of Borrower of the Loan Documents does not violate any provision of law, nor any provision of Borrower's formation documents, including, without limitation, Articles of Incorporation or any partnership or trust agreement, or result in a breach of, or constitute a default under, any agreement, indenture or other instrument to which Borrower is a party or by which Borrower may be bound;

(c) Authorization. This Agreement and the other Loan Documents have been duly authorized, executed and delivered, and are legal, valid and binding agreements of Borrower enforceable against Borrower in accordance with their terms, except as enforceability may be limited by Bankruptcy, solvency, reorganization, moratorium or similar laws effecting creditors' rights generally and by general principles of equity;

(d) Consent and Licenses. No consent, approval or authorization of, or registration or filing with, any governmental body or authority, or any other person, firm or entity not a party hereto, is or will be required as a condition to the valid execution, delivery, performance or enforceability of the Loan Documents, or the transactions contemplated hereby or thereby, or to the conduct of Borrower's business;

(e) Litigation. There is no litigation either pending or, to the best of its knowledge, threatened against Borrower before any court or administrative agency, or before any arbitrator, which may have a material adverse effect on the assets, business, financial conditions or operations of Borrower, or which would prevent or hinder the performance of Borrower's obligations under the Loan Documents, and, furthermore, Borrower has not violated any law and, to the best of its knowledge, is not the subject of any investigation by a governmental agency that could result in an indictment or a forfeiture or seizure of any of its assets, other than those lawsuits identified in Schedule 5.1.e attached hereto and incorporated herein by reference;

(f) Environmental Matters. Borrower, to the best of its knowledge after due investigation, is in compliance in all material respects with all applicable environmental, health and safety statutes and regulations and Borrower does not have any material contingent liability in connection with any improper treatment, storage, disposal or release into the environment of any hazardous or toxic waste or substance;

(g) Margin Securities. Borrower will not directly or indirectly invest all or any part of the proceeds of the Loan in any security subject to the margin requirements of Regulations G, T, U, or X of the Board of Governors of the Federal Reserve System or use all or any part of proceeds of the Loan to reduce or retire any indebtedness which was originally incurred to purchase any margin securities or for any other purpose which would violate any of the margin regulations of the Board of Governors of the Federal Reserve System;

(h) ERISA. Borrower is in compliance with the Employee Retirement Income Security Act of 1974, as amended ('ERISA') , and the regulations and published interpretations thereunder, and no Reportable Event (as defined in ERISA) has occurred with respect to any plan subject thereto. Borrower has not incurred any material funding deficiency within the meaning of ERISA and has not incurred any material liability to the Pension Benefit Guarantee Corporation in

5

Borrower Initials_____
Lender Initials_____

connection with any such plan established or maintained by Borrower except as disclosed in its Bankruptcy Plan Petition; and

(i) Investment Company Act. Borrower is not, and is not directly or indirectly controlled by, or acting on behalf of, any person which is, an 'Investment Company' within the meaning of the Investment Company Act of 1940, as amended.

6. COVENANTS OF BORROWER.

6.1 COVENANTS. Until the payment in full of the Loan and until the fulfillment of all of its obligations hereunder and under the other Loan Documents, Borrower shall comply with the following covenants:

(a) Books and Records. Borrower shall at all times keep accurate and complete books, records and accounts of all of Borrower's business activities, prepared in accordance with generally accepted accounting principles consistently applied, and Borrower shall permit Lender, or any persons designated by Lender, at any reasonable time, to inspect, audit and examine such books, records and accounts and to make copies or extracts thereof;

(b) Statements and Reports. Borrower shall furnish to Lender:

(i) within the number of days set forth in Section 13 hereof after the end of each fiscal year of Borrower, financial statements of Borrower, which shall include a balance sheet, an income statement showing the results of operations for such a fiscal year and a change in financial position statement for such fiscal year, together, in each case, with the comparable figures for the immediately preceding fiscal year, all in reasonable detail and prepared in accordance with generally accepted accounting principles, consistently applied, which statements shall contain the certification requirements set forth in Section 13 hereof;

(ii) within the number of days set forth in Section 13 hereof after the end of each of the fiscal periods of Borrower set forth in Section 13 hereof, financial reports of Borrower, which shall include a balance sheet, an income statement showing the results of operations for such fiscal period and a change in financial position statement for such fiscal period, together, in each case, with the comparable figures for the immediately preceding corresponding fiscal period, all in reasonable detail and prepared in accordance with generally accepted accounting principles, consistently applied, and containing the certifications required pursuant to Section 13 hereof;

(iii) with each such set of financial statements, a certificate prepared as at the end of the period covered by such financial statements, showing the computation as of such date of each of the financial covenants contained in Section 6.1(d);

(iv) within twenty (20) days after the end of each month a Borrowing Base, to which shall be attached the following reports:

(A) An aging and listing of all accounts receivable prepared in accordance with generally accepted accounting principles which itemizes each account debtor by name and addresses and

6

Borrower Initials_____
Lender Initials_____

which states the total amount payable to Borrower and contains a breakdown indicating future amounts due and when due, current amounts due, amounts thirty (30) days past due, sixty (60) days past due, and ninety (90) or more days past due, and reflecting any credit adjustments, returns and allowances;

(B) An aging and listing of all accounts payable-trade prepared in a similar manner;

(C) A complete and detailed description of all inventory containing a breakdown into the categories referenced in Section 1.2 hereof and set forth in Section 13 hereof;

(v) promptly, from time to time, upon request of Lender, such other information concerning the financial condition, business and affairs of Borrower as shall be reasonably requested by Lender;

(c) Notices. Borrower shall promptly notify Lender in writing of the occurrence of any Event of Default under any of the Loan Documents or any act or event which, with the giving of notice or the passage of time, or both, would be such an Event of Default and of any legal action, proceeding or investigation threatened or instituted against Borrower that might have a material adverse effect upon the operations, financial condition or business of Borrower or Borrower's ability to repay the Loan, or Lender's security interest in the Property, and from time to time, at Lender's request, Borrower will furnish to Lender a summary of the status of all such actions, proceedings or investigation;

(d) Maintain Business. Borrower shall maintain in full force and effect all licenses, permits, authorizations, bonds, franchises and other rights necessary or desirable to the profitable conduct of its business, shall continue in, and limit its operations to, the same general lines of business as are presently conducted and shall comply with all applicable laws, orders, regulations and ordinances of all governmental authorities, and, if a corporation or partnership, shall maintain its corporate or partnership existence;

(e) Mergers, Sale of Assets. Borrower will not, without Lender's prior written consent: (i) sell, lease, transfer or dispose of substantially all of its assets to another entity; or (ii) consolidate with or merge into another entity, permit any other entity to merge into it or consolidate with it, or permit any transfer of the ownership of, or power to control, Borrower;

(f) Dividends and Other Distributions. If so indicated in Section 13 hereof, Borrower will not, without Lender's prior written consent, declare, order, pay or make, directly or indirectly: (i) any dividend or other distribution on or on account of any shares of any class of stock or any partnership interest of Borrower now or hereafter outstanding, except a dividend payable solely in shares of Borrower's common stock; (ii) any management fee; (iii) any loans to shareholders partners of Borrower; or (iv) any redemption, retirement, purchase or other acquisition of any shares of any class of stock interest of Borrower now or hereafter outstanding or of any warrants or rights to purchase any such stock or partnership interest, except (if Borrower is a corporation) to the extent that the consideration paid for any such redemption, retirement, purchase or acquisition consists of shares of Borrower's common stock;

7

Borrower Initials_____
Lender Initials_____

(g) Capital Expenditures. Borrower will not, without Lender's prior written consent, in any twelve (12) month period, purchase, invest in or otherwise acquire additional fixed assets, which in the aggregate cost Borrower more than the amount set forth in Section 13 hereof;

(h) Leases. Borrower will not, without Lender's prior written consent, enter into any lease of personal property which would cause Borrower's total rental obligations in any fiscal year to exceed the amount set forth in Section 13 hereof;

(i) Indebtedness. Borrower will not, without Lender's prior written consent, (i) incur, create, assume or permit to exist any obligation or indebtedness, except (A) existing indebtedness disclosed on financial statements previously delivered to Lender, (B) the Loan and (C) other indebtedness and trade obligations and normal accruals in the ordinary course of business not yet due and payable; (ii) become liable, directly, or indirectly, as guarantor or otherwise, for any obligation of any other person or entity, except existing obligations of such kind previously disclosed to Lender in writing, in excess of the amount set forth in Section 13, except as may otherwise be permitted or ordered pursuant to 11 U.S.C. § 507;

(j) Insurance. Borrower shall maintain and keep in force insurance of the types and amounts customarily carried in its lines of business, including, without limitation, fire, public liability, product liability, property damage and workers' compensation, such insurance to be carried with companies and in amounts satisfactory to Lender, in its reasonable discretion, and Borrower shall deliver to Lender from time to time as Lender may request, schedules setting forth all insurance then in effect and copies of the policies; and

(k) Environmental Matters. Borrower will take all reasonable actions to prevent the occurrence of any material violation of any applicable environmental, health and safety statues and regulations, or any order or judgment of any court with respect to environmental pollution or contamination, hazardous waste disposal or any other environmental matter and Borrower shall promptly give written notice to Lender of the following occurrences and of the steps being taken by Borrower, with respect thereto:
    (i) notice that Borrower's operations are not in full compliance with the requirements of applicable environmental, health and safety statutes and regulations; (ii) notice that Borrower is subject to a governmental investigation evaluating whether any remedial action is needed to respond to the release of any hazardous or toxic waste or substance into the environment; or (iii) notice that any properties or assets of Borrower are subject to any environmental lien.

7. EVENTS OF DEFAULT.

7.1 EVENTS OF DEFAULT. The occurrence of one or more of the following events shall constitute an Event of Default under this Agreement:

(a) There shall occur an event of default under a Security Agreement;

8

Borrower Initials_____
Lender Initials_____

(b) Borrower fails to observe or perform any of the covenants, conditions and agreements on the part of Borrower contained herein or in any of the other Loan Documents other than the Security Agreements;

(c) If any representation or warranty made by Borrower to Lender contained herein or in any of the other Loan Documents proves to have been untrue in any material respect when made; or

(d) Borrower shall be in default in the payment or performance of any material obligation under any indenture, contract, mortgage, deed of trust or other agreement or instrument to which Borrower is a party or by which it is bound.

(e) Borrower shall fail to make payments under the Note or in violation of the provisions of section 1.3 set forth above.

8. REMEDIES OF LENDER UPON DEFAULT.

8.1 REMEDIES. At any time after any Event of Default has occurred, Lender may, without presentment, demand, protest or further notice of any kind (all of which are hereby expressly waived) and, notwithstanding the provisions contained in any other document or instrument executed or to be executed by Borrower to Lender hereunder or contained in any other agreement, take any one or more of the following actions:

(a) Declare the entire principal and any accrued interest on the Loan, together with all costs and expenses, to be immediately due and payable, and to enforce payment thereof by any means permitted by law or in equity;

(b) Without accelerating payment, enforce the payment of sums of principal and interest then due (including any penalty interest or late payment charges);

(c) Require Borrower to take or refrain from taking any action which may be necessary to cure such Event of Default and to obtain affirmative or negative injunctions or restraining orders with respect thereto;

(d) Seek relief from 11 U.S.C. § 363 from the United States Bankruptcy Court without objection from the Borrower, any such right to object being waived, absence evidence of fraud or misrepresentation by the Lender as against the Borrower;

(e) File suit for any sums owing or for damages; and

(f) Exercise any other remedy or right provided in law or in equity or permitted under this Agreement, the Security Agreements or any of the other Loan Documents.

8.2 REMEDIES CUMULATIVE. Any and all remedies conferred upon Lender shall be deemed cumulative with, and nonexclusive of any other remedy conferred hereby or by law, and Lender in the exercise of any one remedy shall not be precluded from the exercise of any other.

9

Borrower Initials_____
Lender Initials_____

## 9. ATTORNEYS' FEES AND EXPENSES.

Borrower shall pay all of its own costs of closing the Loan and Lender shall pay all of its own costs of closing the Loan. Each party shall bear their own legal fees associated with the Loan and its closing. Borrower however shall pay Lender's attorneys' fees and costs incurred in the collection of any indebtedness hereunder, or in enforcing this Agreement, whether or not suit is brought, and any attorneys' fees and costs incurred by Lender in any proceeding under the Federal Bankruptcy Code in order to collect any indebtedness hereunder or to preserve, protect or realize upon any security for such indebtedness. Any such fees shall be first approved by the United States Bankruptcy Court, or any other court having jurisdiction, in accordance with applicable law.

## 10. WAIVER.

Any waiver of any of the terms of this Agreement by Lender shall not be construed as a waiver of any other terms of this Agreement, and no waiver shall be effective unless made in writing. The failure of Lender to exercise any right with respect to the declaration of any default shall not be deemed or construed to constitute a waiver by or to preclude Lender from exercising any right with respect to such default at a later date or with respect to any subsequent default by Borrower.

## 11. NOTICES.

Any notices required or permitted to be given pursuant to the Loan Documents shall be in writing and shall be given by personal delivery or by mailing the same by United States mail, postage prepaid, to the address set forth in Section 13 hereof. Any such notice shall be deemed received for purposes of this Agreement upon delivery if given by personal delivery or three (3) days after the mailing thereof if given by mail. If either party desires to change the address to which notices are to be sent it shall do so in writing and deliver the same to the other party in accordance with the notice provisions set forth above.

12. MISCELLANEOUS. This agreement may be exeuted in counterparts. Any facsimile signature or electronic signature or photocopy signature shall be deemed to be as vala=id as an original.

12.1 PARTIES. This Agreement is made solely between Borrower and Lender, no other person shall have any right of action hereunder. The parties expressly agree that no person shall be a third-party beneficiary to this Agreement.

12.2 INDEMNITY. Borrower agrees to and shall indemnify, hold harmless and defend Lender from any liability, claims or losses resulting from the disbursement of the proceeds of the Loan or from the condition of the Property whether arising during or after the term of the Loan. This provision shall survive repayment of the Loan and shall continue in full force and effect so long as the possibility of such liability, claims or losses exists.

12.3 ENTIRE AGREEMENT. This Agreement (including, if so indicated in Section 13 hereof, the Addendum attached hereto and by this reference incorporated herein), together with all other

Borrower Initials_____
Lender Initials_____

Loan Documents, constitutes the entire agreement of the parties hereto and thereto, and no prior agreement or understanding with respect to the Loan, whether written or oral and including, but not limited to, any loan commitment or Term Sheet issued by Lender to Borrower, shall be of any further force or effect, all such other prior agreements and commitments having been superseded in their entirety by the Loan Documents.

12.4 ASSIGNMENT. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective executors, administrators, heirs, successors and assigns; provided, however, that neither this Agreement nor any rights or obligations hereunder shall be assignable by Borrower without the prior express written consent of Lender first had any obtained, and any purported assignment made in contravention hereof shall be void. Lender may assign any part of or all of the Loan and its rights and obligations hereunder at any time in its sole discretion. Lender may participate all or any portion of the Loan to such other party or parties as Lender shall select.

12.5 GOVERNING LAW. This Agreement and each of the Loan Documents shall be construed in accordance with and governed by the internal law, and not the law of conflicts, of the Commonwealth of Massachusetts.

12.6 TIME. Time is of the essence hereof.

12.7 SURVIVAL. The representations and warranties hereunder shall survive the closing of the Loan and Lender may enforce such representations and warranties at any time. Borrower's covenants shall survive the closing of the Loan and shall be performed fully and faithfully by Borrower at all times. The indemnities of Borrower shall survive repayment of the Loan.

12.8 SEVERABILITY. If any term or provision of this Agreement of any other Loan Document, or the application thereof to any circumstance, shall be invalid, illegal or unenforceable to any extent, such term or provision shall not invalidate or render unenforceable any other term or provision of this Agreement or any other Loan Document, or the application of such term or provision to any other circumstance. To the extent permitted by law, the parties hereto hereby waive any provision of law that renders any term or provision hereof invalid or unenforceable in any respect.

13. STATEMENT OF MATERIAL TERMS.

1.1 Maximum Loan Amount: $500,000.00

1.1 Expiration Date and payment terms: Interest only until a bankruptcy re-organization plan is approved ("Plan Approval"), and upon Plan Approval, payments shall be made on a 10 year amortization schedule with a balloon payment 63 months from Plan Approval, or (ii) if Plan Approval does not take place within 12 months of the date of execution of the Promissory Note upon 3 months notice.

3.2 Persons Authorized to Request Advances: MARK GIBSON CHAIRMAN OR GLEN GIBSON, VICE PRESIDENT, OR KATHY ROONEY CONTROLLER

11

Borrower Initials_____
Lender Initials_____

4.1 Commitment Fee: $0.00

4.2 Non-Utilization Fee: N/A% per annum

4.3 Inspection Fee: N/A% per inspection

4.4 Interest Rate: 6.5% per annum fixed for duration of Loan

6.1 (b) (i) Statements due within 150 days of each fiscal year
      Certification Requirements: CPA compilation review

6.1 (b) (ii) Statements due within 60 days of each month
      Certification Requirements: COMPANY PREPARED

6.1 (b) (C) Inventory Statement to be prepared internally by company

14. Address for Notices:

To Borrower: Mark Gibson, President
         55 Leonard St.
         Foxboro MA 02

With copy to: Vincent A. Indeglia
         **FERRUCCI RUSSO, P.C.**
         **Counsellors at Law**
         55 Pine St.
         4th Floor
         Providence, RI 02903

To Lender: On the Top, a Massachusetts General Partnership
         **C/o Bohman Thayer Real Estate LLC**
         8 Academy Place
         Orleans, MA 02653
         Attn: Todd Thayer

With copy to:
         Daniel M. Creedon, III
         Creedon & Early, P.A.
         Attorneys At Law
         1436 Iyannough Road, Suite 1
         Hyannis, MA 02601

12

Borrower Initials_____
Lender Initials_____

IN WITNESS WHEREOF, the parties have executed this Agreement this _____ day of March, 2011

Borrower:                                   Lender:

_____             _____
By:                                         By:

PRINTED NAME:                               PRINTED NAME:

TITLE:                                      TITLE:

13

Borrower Initials_____
Lender Initials_____