**EXHIBIT 6**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In Re: 21st Century Roofing Systems, Inc.

C.A. NO.
Chapter 11

## AFFIDAVIT

I, Mark Gibson, upon oath, depose and say as follows:

1. I am the President of 21st Century Roofing Systems, Inc. ("21st Century").

2. 21st Century, is a corporation organized pursuant to the laws of the Commonwealth of Massachusetts.

3. 21st Century is a construction company specializing in commercial roof repairs and commercial roof construction.

4. Generally, 21st Century's business requires an initial outlay of cash, via a loan, to purchase materials with which to perform a roofing job, and as the work proceeds and payments are received, the initial outlay of cash can be repaid.

5. From in or about 2007 through the Spring of 2010, 21st Century's sole working capital lender was Milford National Bank and Trust Company ("hereinafter referred to as Milford"). 21st Century had a working capital revolving line of credit with Milford in the amount of $750,000.00. Upon information and belief, until 2011, 21st Century has never missed a payment nor has it been beyond terms in making its contractually obligated monthly interest payments to Milford.

1

6. In or about 2009, despite the fact that 21st Century had not missed any payments on the Line of Credit, Milford National froze the Line of Credit and has since refused to provide 21st Century with any further credit.

7. Since Milford has frozen our working capital line of credit, in my capacity as President of 21st Century, I have approached a number of private lenders to attempt to obtain credit for 21st Century without providing security. Each of these private lenders has refused to provide unsecured credit to 21st Century.

8. In September and October of 2010, my attorneys requested, from Merchants Bank, unsecured credit for 21st Century. In each instance, Merchants Bank declined to provide unsecured credit. In fact they refused to provide a secured credit facility due to the fact that 21st Century was able to demonstrate collateral and cash flow sufficient to satisfy the need to pay off Milford in full.

9. 21st Century's largest material supplier, Bradco a Division of ABC Supply, Co., has declined to provide any further materials to 21st Century on credit. Bradco has demanded that all future shipments of materials be collateralized by the promise of a "joint check" agreement with the General Contractor or Owner on the project.

10. Due to 21st Century's current financial situation, 21st Century's suppliers will only provide building materials on "joint check" or a C.O.D. basis.

11. 21st Century has two roofing jobs lined up to commence in April which require, prior to commencement, the purchase of $190,000.00 worth of roofing materials. Said materials must be ordered by the week ending March 26, 2011.

12. If the Court does not approve the requested Debtor in Possession Financing forthwith, 21st Century will be unable to continue bidding on jobs, performing work on jobs, and

consequently, will not be able to continue to meet payroll, continue to pay taxes, or continue to operate as a going concern.

13. The 13 week projected Cash Flow statement demonstrates that the injection of funds borrowed from our DIP lender will permit us to complete our existing and future jobs and generate a positive cash flow, while simultaneously being profitable enough to pay down the line of credit.

14. I have had the opportunity to review the Loan Agreement as well as the corresponding Note and Security Agreement proposed between 21st Century as he Borrower and the DIP Lender. I have been in business for over 30 years in this industry. I am familiar with construction borrowing and current conventional terms and interest rates. I have reason to believe that this proposed loan is fair and reasonable and in fact better than any loan which could be obtained conventionally for a strong and financially healthy company.

15. This loan is not based upon a loan to value ration of asset base to debt. My experience for small business construction companies is that traditional lenders seek to be collateralized against their loan by at least 70% of the value of accounts receivable under 60 days; 50% of the cost value of inventory; and 60% of depreciated furniture, fixture, equipment and machinery value. Our current value of accounts receivable is approximately $250,000 in total and at least $30,000 of that is over 60 days old. Our inventory is less than $20,000 and much of that is obsolete. Our FFEM is depreciated substantially and we have little in the way of machinery. Our trucks are already encumbered by dealer financing.

16. The loan provided by this DIP lender is extremely competitive in interest rate and terms. This loan is based upon a 6.5% interest rate on a 360 day per annum basis. Its payment terms are interest only until a plan of re-organization is confirmed and then only from cash flow.

If cash flow does not permit repayment at the end of the month the interest will accrue but not compound and this will not amount to an event of default.

17. When Milford called its note and 21st Century was unable to pay, Milford's Vice President Fred O'Duardi, referred 21st Century to what it called a more competitive factoring company, Riviera Finance. Upon information and belief Riviera Finance advised our attorneys that they would purchase our unencumbered receivables in exchange for a 2% discount for the first thirty days they were outstanding. On the 31st day through the 45th day they would charge an additional 2% and on the 46th day a receivable purchased was outstanding they would charge an additional 2%. They further advised that the 2% at each interval was based upon the face amount of each invoice. They advised however at the time of purchase of the invoice they would only advance 70% of the face of the invoice. Once they collected the payment for the invoice from our customer they would remit to us the difference between the 30% they did not pay and their fee. As an example if 21st Century sold Riviera Finance $100,000 of invoices on April 1, Riviera would pay $70,000 to 21st Century. If the invoice was not paid until May 31, (59 days thereafter), Riviera would charge $6,000 for its discount fee and remit to 21st Century $24,000. In essence paying $6,000 to borrow $70,000 for 59 days is equivalent to borrowing at the rate of 51% per annum.

18. Based upon my experience in business, my knowledge of the available credit in these depressed times and the fact that 21st Century is now seeking re-organization through a Chapter 11 Bankruptcy, 21st Century is a significant credit risk. While the DIP lender is seeking security for its loan it is taking significant risk for its 6.5% per annum reward. Furthermore it is not even seeking collateral on pre-petition account receivables. It is willing to forego those assets and allow Milford to take them and keep them as they are collected, eliminating the need

for seeking to use Milford's cash collateral and protecting Milford from further jeopardy.

19. Because I have, on behalf of 21st Century sought to obtain credit from a variety of sources and failed, because this loan will not jeopardize the current Lender's cash collateral, and because the DIP lender's loan provisions are more favorable than any conventional "A" tier lender in the market, on behalf of 21st Century, I respectfully request that this Motion for Interim Relief filed by my attorneys be granted.

_____
Mark Gibson, President
21st Century Roofing Systems, Inc.

STATE OF RHODE ISLAND
~~COMMONWEALTH OF MASSACHUSETTS~~
COUNTY OF Providence

SWORN AND SUBSCRIBED to on
this 21 day of March, 2011

_____
Notary Public   #61228
My commission expires: 2/14/12

Dated: March 22, 2011

Notary Public
My Commission Expires on: 2/14/12

5